# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

NO. 5:08-CR-290-FL
NO. 5:11-CV-370-FL

| | |
|---|---|
| ROBERT THOMAS JONES, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This cause comes before the Court upon the Government's Motion to Dismiss (DE-38) Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("Motion to Vacate") (DE-35). Petitioner has filed a response (DE-41) and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1) this matter is before the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is HEREBY RECOMMENDED that the Government's Motion to Dismiss (DE-38) be GRANTED and that Petitioner's Motion to Vacate (DE-35) be DENIED.

**I. Background**

Petitioner pled guilty to receiving child pornography on November 25, 2008. (DE's 13-15). This guilty plea was memorialized in a written agreement and approved by this Court following a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (DE-31).

In his plea agreement, Petitioner agreed:

1

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.
>
> (DE-14, pg. 1-2).

Likewise, during Petitioner's Rule 11 hearing, the following testimony occurred:

> THE COURT: All right. Have you talked with your lawyer about your case?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand all of the rights that you have?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Are you satisfied with your lawyer's legal services to you?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Do you fully understand what you're charged with?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And how do you plead?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: All right. Do you understand this is a felony offense?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And I'm required to explain to you what the punishment could be for receipt of child pornography . . . Do you understand these penalties . . . ?

THE DEFENDANT: Yes, your Honor . . .

THE COURT: Do you have any questions about these penalties?

THE DEFENDANT: No, your Honor . . .

THE COURT: All right. Do you have any questions about the sentencing process?

THE DEFENDANT: No, your Honor.

THE COURT: Do you understand you're under an oath, Mr. Jones? You've promised -- you've sworn to tell the truth, and, if you don't, you could be the subject of another prosecution?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. There is a plea agreement. It is on the record. It was taken in under seal on September 30th. Did you have an opportunity to read this before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you read it before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does this agreement represent all of the understandings you have with the government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you understand every word in here before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anybody made any other or different promise to you than what's in this agreement?

THE DEFENDANT: No, your Honor.

THE COURT: Did anybody force you to plead guilty?

THE DEFENDANT: No, your Honor.

> THE COURT: Do you understand you're giving up very valuable rights to appeal?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Are you pleading guilty of your own free will because you're, in fact, guilty of the charged offense?
>
> THE DEFENDANT: Yes, your Honor . . .
>
> THE COURT: Have you been truthful in all of your answers?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Is there any other information you want from the Court or advice from your lawyer before we go forward?
>
> THE DEFENDANT: No, your Honor.
>
> (DE-31 pg. 12-17).

On February 18, 2009, the United States Probation Office submitted a Pre-Sentence Report ("PSR") (DE-21). The PSR identified the objections raised by Mr. Slade Trabucco, Petitioner's trial counsel. *Id.* at 13. Furthermore, on February 26, 2009, Mr. Trabucco filed a sentencing memorandum. (DE-19). In his PSR objections and sentencing memorandum, Mr. Trabucco competently argued that: 1) Petitioner's base offense level should be 18 rather than 22; 2) a four-level enhancement pursuant to United States Sentencing Guideline ("USSG") § 2G2.2(a)(2) was not appropriate; and 3) the proposed guideline range does not align with 18 U.S.C. § 3553(a); 4). (DE's 19, 21). For those reasons, Mr. Trabucco argued that a term of incarceration of 60 months would be an appropriate sentence for Petitioner. (DE-19, pg. 6). This argument was well briefed and argued by Mr. Trabucco in the sentencing memorandum. (DE-19). Finally, Mr. Trabucco submitted numerous character letters in support of these sentencing arguments.

4

(DE-16).

Petitioner's sentencing hearing was conducted on March 11, 2009. (DE's 22, 30). During this hearing Mr. Trabucco, withdrew his objections to the PSR, although he still made several other arguments. (DE-30, pg 3). Specifically, the following argument and testimony occurred during Petitioner's sentencing hearing:

> THE COURT: . . . Have you read the Presentence Report and had enough time to discuss it with your attorney?
>
> THE DEFENDANT: Yes, your Honor . . .
>
> THE COURT: And I have reviewed the sentencing memorandum that the Defendant has provided as well and the letters that have been sent in support of the Defendant. So I have the benefit of all of that information . . .
>
> THE COURT: You are being given the benefit of having accepted responsibility, and that appears clear to me in the record. Is the Government moving for the third point?
>
> MR. ONTJES: It is, your Honor.
>
> THE COURT: It's allowed. That reduces the total offense level to 30 . . . I confirm for the record that that is the advice of the guidelines as consented to and agreed to by the Defendant who has withdrawn all objections. The advice is 97 to 121 months term of imprisonment where you face not less than five years or 60 months by law, and not more than 20 years . . . I will be happy to hear you on what you think bears on the factors of a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing . . .
>
> MR. TRABUCCO: Your Honor, these cases are always tough and somewhat interesting, to be honest with you. It's a very emotional subject. I just this morning in my office, I pulled up the most recent Google news stories which indicates an officer, a pastor, an ex-prosecutor, an educator, a city superintendent for school -- the school system, an ex-new jersey representative, another officer, and that is just three pages of the news that just dealt with people who were in prominent positions. So it's kind of a -- I would also like to mention the Ninth Circuit Chief Judge also was under investigation for the same charges, and along with that, just the sheer number. There was an article out the other day regarding the sheer number of cases the DOJ has involved with this offense, the possession of images.

5

I have met with Mr. Jones a great deal. He ran cross country in college. I ran track and field at UNC, although he was at State, so we got to know each other well. I got to know him as a person. I think when it comes to the guidelines in this case, I think I have always had an issue with them, first off, but I think Ronald Reagan put it best when he said government tends not to solve problems, only to re-arrange them.

So what do we have in the initial instance? The guidelines are put in place to prevent citizens from sentencing disparity, and to promote a more uniform system that we all live in.

Well, what does that do? It creates another issue on the other end where people that aren't within that bulk of, okay, this is your range because this is what you did, well there are people that aren't in that (quote, unquote) "heartland". And I think in this case, Mr. Jones does not fit there with his history, with his background. And I think, you know, Congress effectively lumped everyone together and then legislated the sentence basically, and I have issue with that.

And I do like the line of cases since Booker, Booker and its progeny, Rita, Nelson, Spears. I think all of those put the authority more in the court or back in the court's power to say, hey, under 18 U.S.C. 3553(a), it's the court's province to decide what is an adequate sentence, and to take into account the history and characteristics of the defendant, to establish a sentence, of course, that will reflect the seriousness, promote adequate deterrence, and protect the public from any future crimes which my client might commit.

So, with that, in that respect, I am asking that the guidelines not be followed. I don't think I have to request a variance or downward departure. I think it's just -- Judge, I am asking you to follow 3553 as the Supreme Court has forced us, enforced it in all the cases.

That is what they have said. So that is what I am asking you to do. And look at my client as a 50-year old paralegal for Wyrick, Robbins and Yates in Raleigh, who is also a porn addict. A hard thing to deal with. Very emotional. I mean, it doesn't sit well with me. Viewing the images doesn't sit well with me.

He had a porn cache of adult -- a multitude of both child and adult porn in his possession. His wife turns him in. You know. He was seeking treatment prior to that for his addiction and sought treatment after, up until while the charges were still in state and the state jurisdiction. He was in custody. I have spoken with his counselor on a multitude of occasions. He did a great job in seeking help.

6

He actually went to his church that he attended and told basically the congregation what his charges were and what his problem was. That is a big deal today to me, and in the hopes that he will be able to help someone else who has a pornography addiction later on when he gets out because it is something that --and I read all of these cases to you because something is wrong, whether it's organic or whether it's -- I have no idea. It's just -- it's something. But obviously the 97 months sentence isn't going to fix that. It's the treatment that will fix that, and him trying to help others to keep on the right track and be supervised is what is going to help him.

I think his work history shows for itself. He was a -- he worked at FCI-Butner. He was a Wake County Sheriff. He was in the Navy. And as most of these cases are, let's be frank, middle age white men, with a great record and nothing is wrong. But, you know, a lot of times those involve solicitation or some other purchase of something. This involves my client going for a run, his wife looking on the computer, finding the CD that were -- that he -- that contained adult and child pornography, and calling the police. And here we are today.

I think the destruction that he knows he has caused is great. He lost his job. You know. And employment didn't happen. And his family has basically been torn apart by his actions and he knows that very well.

So, your honor, I just ask under 3553(a) that you take those factors into consideration. Take my client's characteristics, his history, and the recent case law from the supreme court and fashion a sentence that is adequate for him, and I think five years is a whole lot of time for my client to reflect and figure out how he is going to get back into society when he gets out and to help other people, because I really do think that he will be able to help other people with this issue, which I think, as I said, needs -- something needs to be done. And I believe that he can do it. And I believe he will do it because I know he is a different person now than he was then just in terms of realizing what his addiction actually did to him and his family.

So we would ask for 60 months. If you need me to request a variance, I will ask for a variance or downward departure, but I don't think I have to anymore. I think you can fashion a sentence of 60 months and that is what we would request.

THE COURT: All right. Thank you. Does your client wish to be heard?

THE DEFENDANT: Yes, your honor. I wrote down some notes and I am going to try to get through it very quickly.

Your honor, I take full responsibility for this crime. I am very ashamed of it. I am humiliated by it. I am very sorry for the pain and the hurt that it has caused . . .

THE COURT: All right. Thank you. Mr. Ontjes, do you want wish to be heard?

MR. ONTJES: Yes, your honor. Your honor, the government would oppose any type of variance in this case. We believe the guideline range is appropriate here. In fact, I was going to ask the court to sentence the defendant at the upper end of the range. This is why. This defendant, over extended period of time, approximately three years, as outlined in the presentence report, paragraph 5, downloaded and viewed child pornography. Not just once, twice. On a regular routine, over almost three years.

And it wasn't 10 photos, 20 photos. It was almost 3,000 photos, 2,897 photos, your honor. That is almost four -- more than four times the maximum number, 600, which the guideline calculates as being the top end of photos for a defendant for enhancement purposes. Your honor, this defendant, the collection he had, was significant. It was substantial. And I would also point out as described in the presentence report, the children, as the court has already indicated, were primarily prepubescent, young children. And unspeakable acts with both other children as well as adult males.

Your honor, the content of those photos I think the court can consider, obviously, in determining whether the guideline range is appropriate. And I would submit to the court it is. This is based on those factors. We have identified at least 15 of those victims. The victims have been notified, to make the court aware. None of them appear today, of course, but we would make the court aware that they have been notified.

Your honor, as listening to the defense counsel and the defendant -- and I am sure you hear this argument often -- these type of cases generally involve middle age, white males, with no record, good jobs, with families, coming from good homes. Your honor, that argument rings so hollow to me because, in essence, what they are saying is I am privileged and therefore I should be given a pass. Because I come from these, a good job, I haven't broken the law before. I am fortunate enough to have an education and to live in a good home.

Well, your honor, I would argue to the court it should be the opposite. That, in fact, they should be held to a higher standard than many defendants you see come before you who don't have a good job, who come from a broken

8

> home, who have no education. And quite frankly, have no means to survive other than selling drugs, perhaps, or breaking the law.
>
> So, your honor, in that respect, I would argue to the court the guideline range is appropriate. This defendant is not the victim, as he would like to portray himself. The victim, in this case, are the children. Thousands of children. And they will be victims in perpetuity because these photos are out there forever. And we can't get them back.
>
> So, your honor, based on that, based on the factors as outlined in 3553(a), the seriousness of the crime, the court should consider, I submit to the court, this is one of the most serious crimes to be committed, as well as protecting society, protecting our children, your honor, demands a sentence within the advisory guideline range. Thank you . . .
>
> . . . THE COURT: . . . I think a sentence within the guidelines range takes into consideration everything I need to take into consideration. I am going to go to the low end of the range though in light of the development of this record. I feel that a sentence at the low end would accomplish all of the purposes of sentencing . . .
>
> (DE-30, pg. 2-17).

Ultimately, the Court sentenced Petitioner to, *inter alia*, a term of imprisonment of 97 months. (DE's 22, 24).

Mr. Trabucco filed a Notice of Appeal on behalf of Petitioner on March 23, 2009. (DE-23). The Fourth Circuit determined that Petitioner knowingly and intelligently waived the right to appeal any sentence that was not above the advisory Sentencing Guidelines range and that the issues raised by Petitioner fell within the scope of that waiver. (DE-32, pg. 2-6). Therefore, Petitioner's appeal was dismissed and Petitioner's conviction and sentence were affirmed in an opinion dated March 15, 2010. (DE's 32-33). Petitioner did not file a petition for certiorari with the United States Supreme Court. (DE-35, pg. 2). Finally, Petitioner filed his Motion to Vacate on July 7, 2011. (DE 35-2).

## II. Legal Standards

**A. Motion to Dismiss**

Respondent has filed its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a [claim] . . . " Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 93 (2007) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The facts alleged must "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A claim may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability" fail to nudge claims "across the line from conceivable to plausible." *Id.* at 1947-1951 (quotations omitted).

Plaintiff, as a *pro se* litigant, is entitled to have his pleadings construed more liberally than those drafted by attorneys. *See* Haines v. Kerner*,* 404 U.S. 519 (1972). Nevertheless, there are limits to which the court may legitimately go in construing such complaints. *See* Beaudett v. City

10

of Hampton, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

**B.  28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

"In a §2255 proceeding, the burden is on the petitioner to prove his allegations by a preponderance of the evidence, not on the government to disprove them."  Abdul-Aziz v. United States, 2008 WL 4238943, *5, fn. 4 (N.D.W.Va. Spt. 12, 2008) (unpublished decision) (*citing* Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006) (unpublished decision)); *see also*, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (stating that during a "proceeding under 28 U.S.C. § 2255 . . . the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . .").

**C.  Effect of Petitioner's Guilty Plea**

A valid guilty plea constitutes admission of the material elements of the crime.  McCarthy v. United States, 394 U.S. 459, 466 (1969).  The sworn representations made by a criminal defendant at plea proceedings "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Furthermore, a guilty plea normally waives any claim based on non-jurisdictional errors occurring prior to the plea.  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  In Tollett, the Supreme Court concluded that an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pled guilty.  The Supreme Court held that: "[t]he focus of federal habeas inquiry is the

11

nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266-67. Thus, in a collateral attack, petitioner may only challenge the voluntary and intelligent character of a plea, such as by demonstrating that he received ineffective assistance of counsel. *Id.*

Notably, statements made by a defendant during a hearing to accept a guilty plea are subject to a strong presumption of veracity, and challenges under 28 U.S.C. § 2255 that contradict these statements may generally be dismissed. Specifically

> [A] defendant's solemn declarations in open court . . . 'carry a strong presumption of verity . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy . . . Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings . . . Thus, in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false" . . .
>
> Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated – permitting quick disposition of baseless collateral attacks.
>
> U.S. v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)(internal citations and quotations omitted)

### D. Ineffective Assistance of Counsel

In his Motion to Vacate, Petitioner asserts that he received ineffective assistance of counsel. To establish a claim of ineffective assistance, Petitioner must satisfy two well-established requirements. First, he "must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). *See*

12

*also*, Satcher v. Pruitt, 126 F.3d 561, 572 (4th Cir. 1997), *cert. denied* 522 U.S. 1010 (1997). Review of counsel's performance in this regard is highly differential. Strickland, 466 U.S. at 689. "[C]ounsel are afforded a strong presumption that their performance was within the extremely wide range of professionally competent assistance." Baker v. Corcoran, 220 F.3d 276, 293 (4th Cir. 2000). The Fourth Circuit further clarified that "competency is measured against what an objectively reasonable attorney would have done under the circumstances." *Id.*

Second, petitioner must also demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. *See also*, Satcher, 126 F.3d at 57. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. However, "an analysis focusing solely on mere outcome determination ... is defective," Lockhart v. Fretwell, 506 U.S. 363, 369 (1993). Instead, a proper prejudice analysis must consider "whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* As a result, a court may not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." *Id*. at 369-370.

### III. Analysis

The undersigned reiterates that Petitioner has waived his right to contest his conviction or sentence, including by § 2255 motion, except for an appeal or motion based upon ineffective assistance of counsel or prosecutorial misconduct not known to him at the time he pled guilty. (DE-14). The Fourth Circuit has held that a defendant can, through a plea agreement, waive his appellate rights as well as the right to collaterally attack his conviction. *See*, United States v. Poindexter, 492 F.3d 263, 267-268 (4th Cir. 2007); Lemaster, 403 F.3d at 220. These waivers are valid and enforceable so long as they are knowing and voluntary. *See*, United States v. Blick,

13

Case 5:08-cr-00290-FL   Document 42   Filed 10/05/11   Page 13 of 17

408 F.3d 162, 168 (4th Cir. 2005); Lemaster, 403 F.3d at 220. The Fourth Circuit has already determined that Petitioner's waivers were in fact knowing and voluntary. (DE-32).

The Government contends that Petitioner's ineffective assistance of counsel claims "are all just indirect ways for petitioner to appeal his sentence." (DE-39, pg. 2). The undersigned agrees with this contention. Thus, much of Petitioner's Motion to Vacate may be dismissed on the basis of the waiver contained in his plea agreement.

Regardless, Petitioner asserts that his trial counsel was ineffective because counsel failed to: 1) move for Petitioner's release pending sentencing; 2) research and argue that USSG § 2G2.2 is "flawed"; 3) "provide mitigating evidence in the form of expert opinion and [Petitioner's] exemplary military service"; 4) object to the Government's breach of the plea agreement; and 5) raise the breach of the plea agreement on appeal. (DE-35, pg. 4-21). Each of these claims is without merit, and Petitioner has failed to establish that he received ineffective assistance of counsel.

First, the undersigned has reviewed the entire record, including counsel's: 1) objections to the PSR (DE-61); 2) sentencing memorandum (DE-19); and 3) argument during Petitioner's sentencing hearing (DE-30). Based on this review, the undersigned concludes that counsel's representation of Petitioner was objectively reasonable. Petitioner's arguments to the contrary are specious at best. Counsel competently argued for a lenient sentence, and, in fact, the Court sentenced Petitioner to the low end of the applicable Guidelines range. (DE-24). In making this argument, counsel addressed each of the relevant factors enumerated in 18 U.S.C § 3553(a). That notwithstanding, Petitioner now argues that counsel was ineffective for failing to raise several arguments. Each of these arguments was without merit, however, and counsel was not ineffective in choosing not to raise them. Morgan v United States, 2006 WL 2689377, * 2 (W.D.N.C.

September 19, 2006)("[c]ounsel is not required by the Sixth Amendment to make meritless motions or objections"). The undersigned shall nonetheless address each issue raised by Petitioner in turn.

Petitioner first contends that trial counsel was ineffective because he failed to move for Petitioner's release pending sentencing pursuant to 18 U.S.C. § 3145(c). Title 18 U.S.C. § 3143(a)(2) states that, generally, a person found guilty of the offense committed by Petitioner shall be detained pending sentencing unless " . . . an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person . . . and . . . the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person in the community." 18 U.S.C. § 3143(a)(2). Here, the Government clearly stated during Petitioner's arraignment that it would not "be recommending a no prison sentence." (DE-31, pg. 25). Thus, any request by Mr. Trabucco that Petitioner be released pending sentencing would have been without merit. Moreover, Petitioner has failed to demonstrate how he was prejudiced by this alleged failure. Being detained prior to sentencing did not render that proceeding "fundamentally unfair or unreliable." *See*, Lockhart, 506 US. at 369-370.

Petitioner's second and third arguments are factually inaccurate. He argues, *inter alia*, that counsel: 1) "failed to research and argue that the guidelines under section 2G2.2 are flawed"; and 2) "failed to provide mitigating evidence . . ." (DE-35, pg. 8, 14). The undersigned has already summarized the record in this matter, and that record clearly shows that, contrary to Petitioner's allegations, Mr. Trabucco: 1) competently argued that the Court should not follow the Sentencing Guidelines in Petitioner's case (DE-30, pg. 6-10); and 2) provided the Court with ample mitigating evidence. This mitigating evidence included several character letters. Furthermore, Petitioner specifically mentioned Petitioner's addiction treatment, church

15

attendance, and military service at the sentencing hearing in this matter. Mr. Trabucco was not ineffective, and regardless, Petitioner has again failed to specifically demonstrate how he was prejudiced by these alleged errors. Therefore, these arguments are also without merit.

Finally, Petitioner's remaining claims assert that the Government breached the plea agreement. Specifically, Petitioner argues that the Government failed to fulfill its obligation to "make known to the Court at sentencing the full extent of the Defendant's cooperation." (DE-35, pg. 27). Petitioner refers to paragraph 4(b) of the plea agreement, which states:

> The United States agrees: . . . [t]hat it will make known to the Court at sentencing the full extent of the Defendant's cooperation, but the United States is not promising to move for departure pursuant to U.S.S.G. §5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35.

(DE-14, pg. 7).

According to Petitioner, his "cooperation" consists of: 1) being "cooperative with the Morrisville Police Department and the North Carolina State Bureau of Investigation"; 2) not attempting to "deceive or obfuscate information relative to the crime"; and 3) providing detailed information on where the images were obtained. (DE-35, pg. 18-19). Essentially, Petitioner's "cooperation" was admitting to the crime he was pleading guilty to. To that extent, Petitioner was given the benefit of having accepted responsibility at sentencing. (DE-30, pg. 4-5). Finally, Petitioner also notes that he "offered to assist law enforcement in utilizing his Internet [i]nvestigative skills and international legal contacts to assist in any apprehension of the purveyors around the world." *Id.* at 19. The Government was under no obligation to accept this "offer" and failing to mention it at sentencing did not violate the plea agreement. Likewise, Mr. Trabucco's decision to not mention Petitioner's offer of assistance at sentencing was not ineffective.

16

**IV. Conclusion**

For the aforementioned reasons, it is HEREBY RECOMMENDED that the Government's Motion to Dismiss (DE-38) be GRANTED and that Petitioner's Motion to Vacate (DE-35) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, October 05, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE