IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CR-290-FL-1
5:11-CV-370-FL

| | | |
|---|---|---|
| ROBERT THOMAS JONES, Jr., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on the petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (DE # 35) of petitioner Robert Thomas Jones, Jr., ("petitioner") and the motion to dismiss (DE # 38) filed by respondent, the United States of America ("respondent"). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge William A. Webb entered a memorandum and recommendation ("M&R") (DE # 42) recommending that respondent's motion to dismiss be granted, and that the § 2255 petition be dismissed for failure to state a claim upon which relief may be granted. Petitioner filed objections to the M&R. In this posture, the matter is ripe for ruling. For the reasons that follow, the court rejects petitioner's objections to the M&R and dismisses the § 2255 petition.

## STATEMENT OF THE CASE

On November 25, 2008, petitioner entered a plea of guilty, pursuant to a written plea agreement, to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), as

set forth in the Information (D.E. # 4). On March 11, 2009, the court sentenced petitioner to a ninety-seven (97) month term of imprisonment.

Petitioner appealed, challenging both the validity of his guilty plea and his sentence. See U.S. v. Jones, 373 F. App'x 378, 379 (4th Cir. 2010). The Fourth Circuit held that petitioner knowingly and voluntarily entered his plea agreement, and that the sentencing issue he raised on appeal was within the scope of the appellate waiver provision of the plea agreement. Id. at 379-80. Thus, the court affirmed petitioner's conviction and dismissed his appeal of his sentence. Id.

On July 8, 2011, petitioner filed his petition to vacate his sentence. Petitioner raises the following claims for relief: 1) that he received the ineffective assistance of counsel at his arraignment when counsel failed to move for his release pending sentencing; 2) that counsel was ineffective in failing to research and argue that § 2G2.2 of the Sentencing Guidelines is "flawed and should be held with less deference than typical U.S. Sentencing Guidelines;" 3) that counsel was ineffective in failing to provide certain mitigating evidence consisting of expert opinion and the details of petitioner's military service; 4) that counsel was ineffective at sentencing because he failed to object to the government's purported breach of the plea agreement when it failed to inform the court of the full extent of petitioner's cooperation prior to sentencing; and 5) that he received the ineffective assistance of appellate counsel due to counsel's failure to raise the government's breach of the plea agreement on direct appeal. On August 17, 2011, respondent filed its motion to dismiss for failure to state a claim upon which relief can be granted, to which petitioner filed his response on September 14, 2011.

On September 23, 2011, the court referred the matter to Magistrate Judge Webb. On October 5, 2011, the magistrate judge issued his M&R, recommending that the petition be dismissed. On

2

October 31, 2011, petitioner filed his objections to the M&R, in which he objected to the magistrate judge's recommendations as to claims one through three, but specifically declined to object to the magistrate judge's findings and recommendations as to claims four and five.

## DISCUSSION

A.  Standard of Review

   1.   28 U.S.C. § 2255

Petitioner has filed a motion to vacate pursuant to 28 U.S.C. § 2255, which requires a petitioner asserting constitutional error to prove that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). In such a proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

   2.   Fed. R. Civ. P. 12(b)(6)

When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule 12(b)(6) dismissal because the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 130 S.Ct. 1740 (2010). Accordingly, a district court considering a motion to dismiss under Rule 12(b)(6) "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. and

Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). "[T]he court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alteration marks omitted).

3. Referral to Magistrate Judge

The court may "designate a magistrate judge to submit . . . proposed findings of fact and recommendations for the disposition" of a variety of motions. 28 U.S.C. § 636(b)(1)(B). A party may object to the magistrate judge's proposed findings by filing "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objection." Local Civil Rule, EDNC 72.4(b). The court shall make a *de novo* determination of those portions of the M&R to which a party has filed objections. 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

B. Analysis

Petitioner's claims allege the ineffective assistance of counsel. To succeed on such claims, he must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The first prong is met only where counsel's performance falls "below an objective standard of reasonableness." Id. at 688. "Review of counsel's performance is 'highly deferential[,]' " and the court operates under the "strong presumption that [counsel's] performance was within the extremely wide range of professionally competent assistance." Baker v. Corcoran, 220 F.3d 276, 293 (4th Cir.

4

2000) (citation omitted). The second prong of Strickland's ineffective assistance test is met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. See also U.S. v. Higgs, _ F.3d _, 2011 WL 5867958, at *6 (4th Cir. Nov. 23, 2011). In the context of a sentencing proceeding, in order to demonstrate prejudice the petitioner must show a reasonable probability that he would have received a more lenient sentence if not for the alleged deficient performance of counsel. See Glover v. United States, 531 U.S. 198, 202-04 (2001).[1]

1. Counsel's failure to move for release pending sentencing.

Petitioner first claims that his counsel was ineffective for failing to effectively move for his release pending sentencing. Petitioner argues that counsel was not prepared to adequately argue for his release pending sentencing and failed to file an appeal of the order detaining him despite the statutory authority for such an appeal provided by 18 U.S.C. § 3145(c).[2] Petitioner further asserts that counsel "knew that Movant was desirous of his liberty, particularly given that Movant was undergoing psychiatric counseling from a specialist for his generalized pornography addiction, was trying to secure contractual paralegal work that would assist Movant in supporting his children, and

---

[1] An individual has a right to effective assistance of counsel during a noncapital sentencing hearing. See United States v. Burkley, 511 F.2d 47, 51 (4th Cir. 1975). Although the Court in Strickland left open "the role of counsel in an ordinary sentencing, which may . . . require a different approach to the definition of constitutionally effective assistance," Strickland, 466 U.S. at 686, the courts of appeals have generally applied the same two-step Strickland test to noncapital sentencing hearings. See e.g., United States v. Seyfert, 67 F.3d 544, 547 (5th Cir. 1995); Carsetti v. Maine, 932 F.2d 1007, 1012-14 (1st Cir. 1991); United States v. Stevens, 851 F.2d 140, 145 (6th Cir. 1988); see also United States v. Russell, 34 F. App'x 927, 927-28 (4th Cir. 2002) (unpublished) (per curiam) (applying Strickland where counsel failed to object to the calculation of a base offense level at sentencing).

[2] In pertinent part, § 3145(c) reads as follows:
A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

5

was continuing to actively assist in the care and supervision of his children."[3] Pet'r's Mot. To Vac. 5. Petitioner claims that the following circumstances satisfy the "exceptional reasons" component of § 3145(c): 1) that his crime was not actually "violent;" 2) that he fully cooperated with law enforcement prior to pleading guilty; 3) that he had "obtained psychiatric counseling;" and 4) that he "continued to care for his daughters and paid his child support on time until he ran out of money in October 2008." Id. at 7.

Petitioner has failed to state a claim upon which relief under § 2255 could be granted. By its own terms, § 2255 provides relief for a "prisoner in custody under sentence of a court . . . claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." § 2255(a). Petitioner's claim that counsel somehow was ineffective

---

[3] The court notes at the outset that petitioner's claim that he did not wish to be detained pending sentencing and somehow suffered prejudice of constitutional magnitude due to such detention contrasts markedly with his own words, in open court, at sentencing. Then, petitioner professed appreciation for the time he had spent incarcerated prior to sentencing, describing the experience as transformative because of the time it afforded him to "reflect" on his life. See 3/11/2009 Tr. (D.E. # 30) 11. Petitioner drew inspiration from the experience of Pierre Bezuhov, the protagonist of Tolstoy's War and Peace, and read an excerpt for the court:

> And I am very thankful for that incarceration, and I had a lot of time to read while I have been locked up, and I read War and Peace, and there is a character named Pierre Bezukhov who said something that is very profound to me, and will read it for you. People talk about adversity and suffering, said Pierre, but if I were asked at this moment whether I would rather be what I was before I was taken prisoner or go through all of that again, my answer would be, for heaven's sake, let me have captivity and horse flesh. We imagine that when we are thrown out of our accustomed groove, that all is lost. But it's only then that what is new and good begins.
> He had been a prisoner of war when Moscow was attacked by the French in the Napoleonic War and he experienced such suffering, but with the person that he became afterwards, he was so profoundly changed that he was thankful for it. And that is the way I feel, too.

Id. at 11-12. Petitioner's present claim that he in fact did not want, and should not have received, "captivity and horse flesh" compels the court to question the sincerity of his assertion, causally linked in his own words, that he has been "profoundly changed" by the experience.

6

in failing to adequately argue for his release pending sentencing does not implicate any of the bases for relief in the text of § 2255 itself. Indeed, because the time petitioner served prior to sentencing counts toward the sentence eventually imposed, petitioner will be eligible for his release from custody earlier than if he had not been detained after his guilty plea.[4] Thus, petitioner failed to allege within the petition any cognizable prejudice flowing form counsel's purported deficient performance.

When respondent correctly argued this point in its memorandum in support of its motion to dismiss, petitioner responded with the following assertion of prejudice:

> Petitioner was uniquely qualified as a paralegal to assist [counsel] with legal research and information gathering for Petitioner's case at sentencing. Because Petitioner was incarcerated he was not able to fully develop the substantial amount of mitigating evidence that should have been presented to the Court by his attorney. As a result, Petitioner's sentence was much higher than necessary as the Court did not allow a downward variance from the sentencing guidelines.

Pet'r's Resp. To Mot. To Dis. 5. Petitioner's assertion of prejudice amounts to nothing more than speculation and is too attenuated to support a claim for relief from his sentence. Petitioner's prowess as a paralegal notwithstanding, counsel is ultimately responsible for presenting evidence at sentencing, and petitioner cannot show that counsel would have materially altered his argument at sentencing had he benefitted from petitioner's service as a paralegal. Moreover, while petitioner does not state precisely what "legal research and information gathering" he could have provided to counsel prior to sentencing, to the extent he posits that the argument and information he provides in support of his second and third claims as such, his claim, for the reasons that will be discussed when the court addresses those claims, is without merit.

---

[4] It is for this reason that petitioner's argument that "Justice Kennedy aptly states, 'our jurisprudence suggests than any amount of jail time has Sixth Amendment significance'" is unavailing. Pet'r's Objections 4 (quoting Glover v. United States, 531 U.S. 198, 203 (2001)). At issue in Glover was whether or not an actual, even if slight, increase in a sentence could constitute prejudice within the meaning of Strickland. It is a far different, and less compelling, question whether, as here, the failure to procure a delay in the beginning of service of one's sentence suffices as prejudice.

Finally, as a practical matter, even if the court accepted petitioner's strained argument that he was somehow prejudiced by his pre-sentencing detention, his claim that he should have been released pending sentencing is without merit. Courts have traditionally described "exceptional reasons" withing the meaning of § 3145(c) as circumstances which are "'clearly out of the ordinary, uncommon, or rare.'" United States v. Larue, 478 F.3d 924, 925 (8th Cir. 2007) (quoting United States v. Brown, 368 F.3d 992, 993 (8th Cir. 2004)). None of the purportedly "exceptional" circumstances identified by petitioner - the supposed non-violent character of his particular crime of violence, his cooperation with authorities, his procurement of psychiatric counseling, or his desire to continue his efforts to provide care for his children - constitute circumstances which the court would deem exceptional. See, e.g., United States v. Mahoney, 627 F.3d 705, 706 (8th Cir. 2010) (reversing district court's decision to allow release pending sentencing of defendant convicted of child pornography charges despite fact that defendant did "'remarkably well on release'"); United States v. Wages, 271 F. App'x 726, 727-28 (10th Cir. 2008) (unpublished decision) (affirming district court's decision to order detention pending sentencing of defendant convicted of receipt of child pornography and concluding that, *inter alia*, defendant's age, lack of criminal record, and desire to continue caring for his elderly mother are not "exceptional" within the meaning of § 3145(c)); United States v. Little, 485 F.3d 1210, 1210-11 (8th Cir. 2007) (finding that defendant's full cooperation with investigation is not "exceptional"); Larue, 478 F.3d at 925 (compliance with terms of pretrial release, payment of child support, and ongoing employment are not "exceptional"); and United States v. Teague, 2009 WL 3261701, at *4 (W.D.N.C. Oct. 8, 2009) (reversing magistrate judge's determination that pre-sentencing detention of defendant convicted of child pornography charges was not warranted because defendant's cooperation, compliance with terms

8

of pretrial release, and lack of criminal history are not "exceptional."). Because the circumstances identified by petitioner are not "exceptional," counsel cannot be faulted for having failed to raise such an argument at arraignment or in a subsequent motion or appeal under § 3145(c).

Petitioner's claim that counsel was ineffective in failing to adequately argue for his release pending sentencing or file an appeal of the order of detention fails to state a claim upon which relief may be granted and is dismissed.

    2.    Counsel's failure to argue that U.S.S.G. § 2G2.2 is "flawed" and entitled to less deference than typical guidelines provisions.

Petitioner claims as follows:

> Mr. Trabucco rendered ineffective assistance at sentencing when he again failed to conduct basic legal research and advice [sic] the Court that the 2G2.2 sentencing guidelines are considered flawed by many courts and should be held to less deference than typical U.S. Sentencing Commission guidelines. Had Mr. Trabucco conducted said research, he would have found the substantial judicial criticism of the 2G2.2 guidelines and enhancements. . . . Thus, Mr. Trabucco had a professional and ethical obligation to Movant to investigate all relevant circumstances and facts relative to sentencing; to challenge information contained in the PSR; and to present to the Court any ground that could lead to a favorable disposition to Movant.

Pet'r's Mot. To Vacate 9-10. Petitioner's motion to vacate lays out what he terms the "flaws" inherent in U.S.S.G. § 2G2.2, as discussed in various federal district court cases and an article written by an Assistant Federal Public Defender. In short, petitioner argues that § 2G2.2 is not "based on empirical data, national experience, or the Sentencing Commission's expertise. Congress mandated the guidelines without the same as well as mandating a mandatory minimum in some cases. As a result numerous courts are varying downward to prevent excessive sentencing." Id. at 10. Thus, petitioner concludes, consistent with the principle established in Kimbrough v. United States, 552 U.S. 85 (2007), the court should have granted a downward variance from the sentencing

9

range established by the guidelines based on its own putative policy objections with the guidelines, and counsel was ineffective for failing to raise such an argument. While petitioner concedes that the cases he cites as favorable to his proposition "are not binding on the Court," he nevertheless contends "they are highly persuasive and offer conclusive evidence that the 2G2.2 guidelines are flawed." Id. at 11. Thus, petitioner faults counsel for failing to raise a legal argument which is not dictated by any binding precedent and, moreover, would have consisted of nothing more than an appeal to the discretion of the sentencing court to vary from a given guidelines range on the chance the court agrees that the relevant guidelines lack empirical support.

Petitioner misapprehends the extent of counsel's obligations in rendering constitutionally sufficient representation. Counsel is not required to "present to the Court any ground that could lead to a favorable disposition to Movant." Pet'r's Mot. To Vacate 10. Indeed, as the Fourth Circuit has recognized, it is an "unexceptionable position" to state that, even where a particular claim or legal argument may not be novel, "its lack of novelty does not imply that failure to raise the claim constitutes ineffective assistance of counsel." United States v. Gregory, 30 F. App'x 55, 57 (4th Cir. 2002) (unpublished decision). Nor are attorneys required to "research into other circuit's law in order to comport with the wide latitude given counsel under Strickland." Id. Cf. Kornahens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) ("Nevertheless, the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law."). "With the benefit of hindsight, rarely can it be said that trial counsel made every possible objection and raised every conceivable viable legal argument. The law, however, requires not perfect but only professionally reasonable performance of counsel . . . ." Poyner v. Murray, 964 F.2d 1404, 1423 (1992) (citing Strickland, 466 U.S. at 669). Thus, counsel's failure in this case to raise an argument that has gained

10

traction with some federal judges and legal commentators, but otherwise has not been embraced in some precedent binding on this court simply cannot rise to the level of constitutional ineffectiveness.[5]

This is the rationale applied by the Third Circuit when it recently rejected a claim similar to petitioner's. See United States v. Myers, 364 F. App'x 769, 771-72 (3d Cir. 2010) (unpublished decision). In Myers, the § 2255 movant argued "that he was denied his Sixth Amendment right to effective assistance of counsel by [counsel's] failure to argue that the guideline under which he was sentenced, U.S.S.G. § 2G2.4, is seriously flawed and should not be followed [because] . . . courts are permitted to discount various guidelines for lack of empirical support." Id. at 770-71. Describing Myers's claim as "novel," the Third Circuit remarked that while it had not yet rendered any "precedential opinion" on the application of Kimbrough to the child pornography guidelines, it had previously recognized that such a variance, even if permissible, was not required. Id. Thus, the court observed,

> Myers is endeavoring to have his counsel's performance declared ineffective based upon a failure to raise a creative argument that analogizes the child pornography guidelines with the crack/powder cocaine guidelines. . . . Although not specifically articulated by Myers, he essentially seeks to have his counsel declared ineffective for the failure to assert an arguably relevant point contained within a not precedential opinion of this Court. We decline to hold counsel to such a standard, which is far beyond what Strickland mandates.

Id. at 771-72.

---

[5] Petitioner cites to two Fourth Circuit cases, United States v. Pauley, 511 F.3d 468 (4th Cir. 2007), and United States v. Smith, 275 F. App'x 184 (4th Cir. 2008), for the proposition that "appellate courts support judges varying downward in child pornography case like Movant's" case. Pet'r's Mot. To Vacate 13. However, in neither of the cited cases did the district court depart downward from the given guidelines range based on a Kimbrough-type policy objection to the supposed lack of an empirical foundation for the relevant guidelines. Rather, in both cases the sentencing court simply decided to sentence below the guidelines range based on that court's weighing of the relevant factors under § 3553.

11

Thus, while counsel could have argued the points and authorities petitioner raises in his motion to vacate, counsel cannot be found to have performed deficiently in failing to do so. Moreover, petitioner cannot show prejudice flowing from counsel's failure to raise this argument. Petitioner's claim presupposes that the court was ignorant of <u>Kimbrough</u> and the policy-based justifications it might rely upon in sentencing outside of the guidelines, and that it needed education on "judicial criticism" of the child pornography guidelines. Likewise, petitioner's claim assumes that, once educated by counsel, the court would have shared in the policy-based objections articulated by some judges and commentators and acted accordingly by sentencing petitioner below the guidelines range. Petitioner is wrong on both counts. The court was well acquainted with <u>Kimbrough</u> and its implications for the already non-mandatory guidelines. Likewise, as is clear from the record, the court considered a low-end guidelines range sentence to be appropriate in this case based upon its weighing of the factors in 18 U.S.C. § 3553(a), including the seriousness of the offense and the more commendable aspects of petitioner's character, experience, family support, and potential for rehabilitation. At sentencing, the Court stated as follows:

> Well, I am taken by the amount of pornography and the extensive period of time, which informs the court as I consider the factors set forth in 18 Untied States Code section 3553 the need to protect the public from further crimes of the defendant. And how deep seeded it appears this compulsion is and how prone the defendant appears to be to consider himself a victim.
> 
> And I am reminded about who the real victims are. These young female children who have been subjected to a heinous act that will haunt each and every one for the rest of their lives, and the fact that we cannot recapture what is out there as the defendant well knows given his skills with computers. What is out there is out there. And there is no way to pull it back.
> 
> You do appear sincere in your hope to be a role model for others suffering from this, to help stop what is, per defenses counsel's googling today, an apparent floodgate of this type of activity.
> 
> It is my experience that a person seated where you are usually has the same background or one similar to you, the same skill sets, high functioning in society, the

12

> same or similar advantages, and is fortunate as you are to enjoy the support of many people, and that you really are fortunate in that, and I think you know that.
>
> And the record should reflect there are a number of people who have come here today to show their support, and the letters I have received are extensive, not only from several people of the law firm who think the world of your skill sets. Also, who can't believe you did what got you here today, and recognize the seriousness of that, and all of the family that has written to the court.
>
> There is no case that is an easy case to sentence in. And, you know, so towards that end, this case isn't different from other cases.
>
> There is the same requirement that I fashion a sentence sufficient but not greater than necessary to comport with the purposes of the sentencing, but as in several cases that have appeared before me today, there is such extremes. You know. You have some talents. You have done a lot of things that are positive, and yet you had this hidden existence.
>
> It seems your first wife may have known about it. Your second wife surely did, and I do take issue that what got you here today wasn't that you went out for a run and left your computer on. What got you here today was all of those years of collecting what you collected and all of those people you encouraged to keep subjecting young girls to this type of depraved action because there were people out there who were willing to be consumers and were enjoying being consumers.
>
> I think a sentence within the guidelines range takes into consideration everything I need to take into consideration. I am going to go to the low end of the range though in light of the development of this record. I feel that a sentence at the low end would accomplish all of the purposes of sentencing.

3/11/09 Tr. 15-17. Petitioner's self-serving argument that the court would have been inclined to enter a sentence below the guidelines range based on some policy-oriented dispute with the supposed non-empirical basis of the child pornography guidelines ignores the clear record from sentencing.

Petitioner cannot show deficient performance or prejudice flowing from counsel's failure to argue that the child pornography sentencing guidelines are "flawed" and deserving of less deference than typical sentencing guidelines. Accordingly, he has failed to state a claim upon which relief can be granted and this claim is due to be dismissed.

3.       Counsel's failure to adequately present evidence in mitigation.

13

Petitioner next claims that counsel was ineffective at sentencing in failing to introduce certain expert opinion bearing on petitioner's diagnosis and treatment for his pornography addiction, and in failing to introduce into evidence the particulars of his military service. Petitioner argues that counsel's failure to submit the opinion of his examining psychiatrist, Dr. Assad Meymandi, and that of his addiction counselor, Geoffrey Zeger, "denied Movant of the development of truthful mitigating information that caused the Court to sentence him to a higher sentence than necessary." Pet'r's Mot. To Vacate 14.

Petitioner has attached Dr. Meymandi's letter to his motion to vacate. In the letter, Dr. Meymandi reports that he was "asked to write a letter of support of Mr. Robert Jones to secure for him possible privilege of probation instead of incarceration." Pet'r's Mot. To Vacate, Exh. G (D.E. #35-1). Dr. Meymandi states that he has performed a neuropsychiatric evaluation of petitioner. Dr. Meymandi provides a brief scholarly account of the history of important religious figures' struggles with addiction and discusses medical science advances in understanding addiction as a product of neurobiology. Id. Dr. Meymandi then observes that "[w]hile all this historical, theological and scientific scholarship is exciting and promising, the fact of how to care for persons afflicted with these problems remains a judicial and penal matter." Id. Dr. Meymandi believes that treatment for "problems" like petitioner's "should be designed with structural, social, restrictive and discipline approach along with intensive psychoanalytically oriented psychotherapy, not mere counseling, even though counseling may be used as an environmental enhancer of control and an agent of super-ego." Id. Thus, he concludes, petitioner should be "placed under strict supervision and electronic surveillance while his access to porn is restricted. I do not see anything to be gained from incarceration." Id.

14

As for Mr. Zeger's opinion, petitioner provides a report prepared by Mr. Zeger prior to sentencing. In the report, Mr. Zeger recounts aspects of his treatment history with petitioner and discusses petitioner's considerable history of viewing pornography. Pet'r's Mot. To Vacate, Exh. D. He opines that petitioner is not a pedophile and recounts petitioner's explanation for his possession of child pornography - that it was a product of his "hoarding"of images which were indiscriminately downloaded along with more substantial numbers of pornographic images of "primarily adult women." Id. Mr. Zeger then discusses a number of "mitigating factors,"[6] derived from state law, which inform his ultimate recommendation that any sentence imposed be lenient and that "Discretionary Authority be utilized." Id.

> In light of these two sets of opinion evidence, petitioner argues that, cumulatively,
>
> Mr. Trabucco's failure to use important mitigating information provided by an expert and the professional therapist treating Movant is not the result of competent strategic choice. Mr. Trabucco's conduct was deficient, lacked an objective standard of reasonableness, and Movant was prejudiced by said conduct. But for Mr. Trabucco's conduct, the result of the proceeding would have been different. Movant would have received a downward variance had the professional evaluations of Dr. Meymandi and Mr. Zeger been fully developed for the Court's consideration, thus Movant received a higher sentence than necessary.

Pet'r's Mot. To Vacate 16.

As for counsel's failure to present the details of petitioner's military service, while petitioner concedes that counsel did raise the fact of his military service in his sentencing memorandum, see Def.'s Sentencing Memo [D.E. # 19] 1, he argues counsel failed to "expound[] on why it is relevant

---

[6] Among the "mitigating factors" discussed by Dr. Zeger are the following: 1) that petitioner voluntarily acknowledged his wrongdoing to authorities and sought treatment before the investigation; 2) that petitioner "has been a person of good character" and has a good reputation in the community; 3) that petitioner was honorably discharged from his military service; 4) that petitioner accepted responsibility for his conduct; 5) that petitioner was "actively involved" in supporting his family; 6) that petitioner has a "support system through his local church;" 7) that petitioner has a positive employment history and was gainfully employed; and 8) that petitioner has responded well to his counseling. Pet'r's Mot. To Vacate, Exh. D.

for the variance." Pet'r's Mot. To Vacate 17. In short, petitioner faults counsel for failing to inform the court that petitioner was part of a multi-generational family tradition of service in the military, that he consistently received the highest possible performance evaluations, that he had been recommended for Officer Candidate School, that he had "received a letter of appreciation from Rear Admiral David Morris," that he had assisted JAG officers in court martial proceedings, that he received a Meritorious Unit Commendation, and that he was twice awarded military member of the quarter, as well as a Joint Service Achievement Medal, a Good Conduct Medal, and the National Defense Service Ribbon. Pet'r's Mot. To Vacate 17. Petitioner contends his service "was exemplary to an unusual degree and should have been considered by the Court under 3553(a) and thus, Movant received a higher sentence than necessary." Id. at 17-18.

Petitioner overstates the significance of the information he faults counsel for failing to present and once again misapprehends the scope of counsel's duty to render constitutionally sufficient assistance. As a practical matter, the opinion of Dr. Meymandi is of limited usefulness in determining an appropriate sentence. Indeed, it appears the fundamental question Dr. Meymandi sought to answer - whether petitioner should receive only probation rather than incarceration - proceeded from the flawed premise that petitioner could receive only probation. Petitioner's conviction subjected him to a mandatory minimum sentence of five years of incarceration. Thus, Dr. Meymandi's opinion that, in general, "[t]reatment of these problems [behavioral disorders like pedophilia] should be designed with structural, social, restrictive and discipline approach" does not account for the legal reality confronting counsel and the court at sentencing. The remainder of Dr. Meymandi's opinion, consisting primarily of his brief discussion of religious and scientific examination of the phenomenon of addiction is, even if illuminating, of no practical use. At

sentencing the court recognized that petitioner's conduct was at least partly the result of addiction and recommended petitioner "for the most intensive addition program that he bureau of prisons has . . . ." 3/11/09 Tr. 18. It is very probable that counsel reasonably believed there would be little benefit in propounding expert opinion that petitioner was addicted to pornography, especially where, the expert's ultimate opinion was, despite the existence of a mandatory minimum sentence, that there was nothing to be "gained from incarceration." Thus, petitioner cannot show deficient performance or prejudice as a result of counsel's failure to sponsor Dr. Meymandi's opinion at sentencing.[7]

With respect to the opinion evidence of Mr. Zeger, petitioner again cannot show deficient performance or prejudice. The court was advised at sentencing that petitioner had sought and maintained a counseling relationship for help with his addiction. See 3/11/09 Tr. 8. Likewise, the PSR described the history of Mr. Zeger's counseling of petitioner. PSR (D.E. # 21) 7. As for the content of Mr. Zeger's opinion, the court finds little that is not redundant to considerations already before the court at sentencing. For instance, the court was aware, as described by Mr. Zeger, that petitioner's conduct appears to have been limited to obtaining and viewing pornographic material, and that he was not a producer of such materials, did not attempt to contact minors online, and did not have any sexual contact with minors. Likewise, substantially all of the factors discussed by Mr. Zeger in his description of relevant "mitigating circumstances" were known to the court by virtue of the PSR, the numerous character letters received by the court, and counsel's presentation at

---

[7] The court further notes that, even though counsel did not offer the opinion evidence of Dr. Meymandi, he nevertheless argued the point made by Dr. Meymandi, which ultimately boils down to the unremarkable observation that treatment, not incarceration alone, is the best cure for addiction. See 3/11/09 Tr. 9 ("But obviously the 97 months sentence isn't going to fix that. It's the treatment that will fix that, and him trying to help others to keep on the right track and be supervised is what is going to help him."). It is evident that, in recommending petitioner for intensive addiction treatment while incarcerated, Dr. Meymandi's point was not lost on the court, even if counsel did not explicitly rely upon Dr. Meymandi to make that point.

17

sentencing. In short, Mr. Zeger's observations of relevant circumstances bearing on sentencing were cumulative and, to the extent he rendered any opinion it consisted merely of his vague appeal to the court's discretionary authority for leniency in sentencing. Counsel cannot be held deficient for failing to offer the specifics of Mr. Zeger's opinion at sentencing, and petitioner cannot show prejudice flowing from counsel's failure to do so.[8]

Finally, the particulars of petitioner's military service, while commendable, were not so germane to the case or the issue of punishment that counsel can be found ineffective for failing to "expound" on the details of petitioner's service. As petitioner concedes, the court was apprized that he had been honorably discharged from his service with the Navy. See Def.'s Sentencing Memo 1; 3/11/09 Tr. 9. However, as a practical matter, the 2008 version of the Sentencing Guidelines Manual, the version relied upon at petitioner's sentencing, instructed that military service is not "ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11 (2008). While petitioner rightly indicates that recent amendments to the Sentencing Guidelines Manual have altered this provision to indicate that such service may be relevant in certain cases, the court is to consider counsel's performance at the time it was rendered, not in light of intervening changes in the law.[9] Finally, the PSR recounts petitioner's report that he received "the Joint Service Achievement

---

[8] Moreover, Mr. Zeger's description of petitioner's explanation for how he obtained the substantial amount of child pornography he accumulated is sufficiently vague to raise the question of whether petitioner was forthcoming with Mr. Zeger about his behavior. The scenario described by Mr. Zeger suggests that illicit child pornography was downloaded by petitioner in bulk, along with more substantial quantities of adult-oriented pornography, so that petitioner could avoid "re-subscribing" to a certain website every month. In other words, Mr. Zeger explains that petitioner downloaded essentially everything and "hoarded" the content, perhaps without specifically intending to download child pornography. In light of petitioner's plea of guilty and the information he shared with law enforcement officers, it is plausible that counsel wished to avoid presenting the dubious scenario described by Mr. Zeger.

[9] Even more relevant, however, is the Sixth Circuit's recent observation that "Congress has specifically instructed that child crimes and sexual offenses are to be treated differently than other types of crimes - the sole grounds permissible for a downward departure are those expressly enumerated in Part 5K. Neither a defendant's lack of prior criminal history not his or her military service are enumerated in § 5K. Accordingly, although these considerations are

18

Medal, Good Conduct Medal, National Defense Service Medal, and Meritorious Service Medal" while serving in the armed forces. PSR 8. Thus, the court was aware of substantially all of the information petitioner faults counsel for failing to present regarding his military service, and he therefore cannot show prejudice.

Petitioner's claim that counsel was ineffective in failing to present certain evidence in mitigation, including opinion evidence and the details of his military service, fails to state a claim upon which relief can be granted and is therefore dismissed.

    4.     Petitioner's claims related to the purported breach of his plea agreement.

In his motion to vacate, petitioner's fourth and fifth claims alleged that counsel at sentencing and on appeal, respectively, were ineffective in failing to challenge the government's purported breach of his plea agreement. The magistrate judge recommended dismissal of these claims. Mem. and Rec. 16. Petitioner does not object to the recommendation of the magistrate judge with respect to these two claims. See Pet'r's Objections 11. Accordingly, these claims are dismissed.

C.    Certificate of Appealability

The court now must determine whether petitioner is entitled to a certificate of appealability. Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides in pertinent part that a § 2255 applicant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a

---

permissible grounds of departure for other types of crimes, these two factors are specifically excluded from consideration for child crimes and sexual offenses." United States v. Reilly, __ F.3d __, 2011 WL 6004565, at *3 (6th Cir. Dec. 2, 2011) (internal citations and quotations omitted) (holding that "the guidelines prohibited the district court from departing downward from [convicted child pornography distributor's] sentencing range based on either his lack of prior criminal history or his exemplary service in the armed forces.").

19

constitutional right." See 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

Petitioner has failed to meet the requirements for a certificate of appealability. The court properly dismissed petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and petitioner failed to make a "substantial showing" of the denial of a constitutional right. Petitioner has not shown that reasonable jurists would find that decision debatable. Therefore, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the foregoing reasons, and as supplemented herein, the court ADOPTS as its own the magistrate judge's recommendation on the merits (DE # 42), that respondent's motion to dismiss (DE # 38) be GRANTED, and petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (DE # 35) be DISMISSED. The court also DENIES a certificate of appealability. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 27th day of December, 2011.

LOUISE W. FLANAGAN
United States District Judge